## PETER v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
December 5, 1927.

No. 7238.

**1. Criminal law** ⬤⟶1048—**Appellate court in criminal case should notice prejudicial error, though not excepted to.**

Appellate court may notice a plain error, though not excepted to, and in criminal case should do so, where particular error must necessarily have been prejudicial.

**2. Criminal law** ⬤⟶308—**One accused of crime is presumed to be innocent.**

Defendant, accused of crime under indictment, is presumed to be innocent.

**3. Post office** ⬤⟶48(4)—**Object of indictment for devising scheme to defraud by use of mails is to state particulars of scheme (Pen. Code, § 215 [18 USCA § 338]).**

Purpose of indictment, under Penal Code, § 215 (18 USCA § 338), for devising or intending to devise scheme to defraud by use of mails, is to advise defendant, in advance of the evidence, what are the particulars of the scheme which he is charged to have devised.

**4. Post office** ⬤⟶50—**Instruction that use of mails in fraudulent stock-selling scheme charged was organization of successive corporations to which defendant would lend money held reversible error, as outside indictment (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution, under Penal Code, § 215 (18 USCA § 338), for using the mails to defraud by means of sale of mining stock, instruction that defendant was accused of devising scheme of organizing successive corporations, inducing purchase of stock by false representations, and of loaning money to corporation, and subsequently acquiring its assets through legal proceedings, *held* reversible error, under indictment which charged defendant with false representations to induce purchase of stock, where nothing was said in indictment about successive corporations, and it was not alleged that defendant was getting corporations in debt to him.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Charles Peter was convicted of using the mails to defraud, and he brings error. Reversed.

Thomas D. Lewis, of Salt Lake City, Utah, for plaintiff in error.

David H. Cannon, Sp. Asst. U. S. Atty., of Los Angeles, Cal. (Charles M. Morris, U. S. Atty., and Edward M. Morrissey, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for the United States.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

SCOTT, District Judge. This case comes here upon writ of error to the District Court of the United States for the District of Utah. The plaintiff in error, Charles Peter, was convicted upon two counts of an indictment (counts 2 and 3) charging the plaintiff in error with violation of section 215 of the Penal Code of the United States (18 USCA § 338) in six counts. The scheme or artifice to defraud alleged to have been devised is set forth in count 1 of the indictment, and the same scheme is adopted by reference in each of the other counts of the indictment. Verdict of conviction having been returned on counts 2 and 3, sentence was pronounced, and plaintiff in error assigns, we think wholly unnecessarily, 79 different errors.

[1] Counsel seems to have been so absorbed in the framing of assignments of error, which might have been omitted, that what we deem to be the controlling question in this case was not reached until the seventy-eighth assignment, and it is doubtful whether that particular assignment rests upon any sufficient exception. It is possible, however, that we might be justified in holding the question in-

volved in the exception to the court's ruling to direct a verdict for the plaintiff in error. In any event, under its rules and its repeated holdings, this court may notice a plain error, although not excepted to, and we think in a criminal case, where the particular error must necessarily have been prejudicial, we should do so.

The seventy-eighth assignment of error is as follows:

"78. That the court erred in charging the jury as follows, to wit: The particular scheme charged in the indictment and relied upon by the prosecution in the case is, as has been heretofore frequently stated to you in substance, the following: That the defendant devised this scheme:

"1. That he would organize successive corporations.

"2. That he would induce the purchase of stock in these successive corporations by false and fraudulent representations and promises as to the use to be made of the funds to be derived from such stock sales and as to the early payment of dividends by such corporations.

"3. That he would loan money to the corporations and get it in debt to himself, and at some favorable opportunity, by some appropriate legal proceeding, sell the assets of the corporation and thereby render the stock of investors worthless.

"4. That he would thereafter or thereupon organize another corporation and repeat the scheme.

"The question for you to determine is: Does the evidence in the case convince you beyond a reasonable doubt that the defendant, at some time prior to the mailing of the letter or of the document mentioned in the respective counts of the indictment, if he did mail them or cause them to be mailed, had in mind the scheme charged in the indictment and relied upon by the government to secure a conviction at your hands."

As heretofore intimated, there was no exception to the charge of the court; but there was an exception to the court's ruling in overruling the plaintiff in error's motion to direct a verdict in his favor. The assignment quoted, and the character of the question it presents, makes it necessary that we here set out hæc verba that portion of count 1 of the indictment containing the charge of the scheme or artifice pleaded, and which is in the following language:

"That one Charles Peter, hereinafter in this indictment called 'defendant' and referred to whenever the term 'defendant' may be hereinafter used, at Salt Lake City, Salt Lake county, state and district of Utah, and within the jurisdiction of this court, between or about the 3d day of September, 1915, and the date of the finding and returning of this indictment, and continuously during the said period of time, unlawfully, fraudulently, and knowingly did devise and intend to devise a scheme and artifice for obtaining money and property, by means of false and fraudulent pretenses, representations and promises, from Carl S. Aune, G. Adolph Lobner, Henry Meilke, A. Walton, August Bliefernich, Mr. and Mrs. Louis Ritter, Peter Roeder, William Jacobson, Jr., and other persons whose names are to the grand jurors unknown, all persons residing within the United States, and hereinafter referred to as 'persons to be defrauded,' and including all those persons whom the defendant should and did by the means and in the manner hereinafter described, induce and persuade to pay and send their money and property to the defendant, as hereinafter alleged.

"That said scheme and artifice so devised and intended to be devised by the said defendant was in substance and effect as follows, to wit:

"It was the intent, object, and purpose of the said defendant to organize, or cause to be organized, under the laws of the states of Utah and Idaho, certain corporations, which corporations should be formed and organized for the pretended purpose of carrying on mining operations in and around Blaine county, Idaho, for the benefit and profit of the persons to be defrauded who should and did become stockholders in said corporations, but were to be and were thereafter organized, for the personal benefit, profit, and financial gain of the said defendant; that said corporations were to be dominated and controlled by the said defendant for his own personal gain and benefit, without regard for the interest and benefit of the persons to be defrauded, to induce, persuade, and solicit the said persons to be defrauded to pay and send their money and property to the defendant under his own name, and under the names of the Mascot Mining & Milling Company, Mascot Mining & Milling Company, Limited, and Consolidated Mascot Mines Corporation, and to induce and persuade the said persons to be defrauded to pay and send their money and property as aforesaid, it was the intent and object of said defendant by word of mouth and by means of letters, circular letters, financial statements, pamphlets, newspaper and magazine articles, to make, and defendant did thereafter make, false and fraudulent pretenses, representa-

tions, and promises to the persons to be defrauded, concerning the purposes, objects, organization, management, control, stability, and financial condition of the said corporations so to be formed and organized, and concerning the amount, extent, and the state of development work done, and the nature, extent, and value of the ore bodies discovered on the properties which the defendant should and did, at the time such false and fraudulent pretenses, representations, and promises were to be made and were made, claim said corporations owned and operated, and concerning the amount of ore ready for milling and shipping from the said properties, and concerning the ability, integrity, qualifications, and purposes of the officers and directing heads of the said Mascot Mining & Milling Company, Mascot Mining & Milling Company, Limited, and Consolidated Mascot Mines Corporation, and concerning the opportunity offered investors subscribing for stock in said corporations, to obtain profitable employment with said corporations and to make large financial gains;

"That, as part of said scheme and artifice, the said defendant, did on or about the dates hereinafter set out, organize, or cause to be organized, the following corporations, to wit: Mascot Mining & Milling Company, a corporation of Utah, organized September 4, 1915; Mascot Mining & Milling Company, Limited, a corporation of Idaho, organized March 6, 1916; Consolidated Mascot Mines Corporation, a corporation of Idaho, organized July 6, 1921;

"That among the false and fraudulent representations and promises so to be made, and so made by the said defendant, were particularly the following:

"(1) That during the summer of 1915, the defendant Peter had obtained an option to purchase certain mining claims known as 'Silver Fortune,' 'Orgonia,' 'Snow-Clad,' and 'P. K. Lode,' in the Warm Springs mining district, Blaine county, Idaho, which claims are hereinafter referred to as 'mining properties' and referred to whenever that term may be hereinafter used, for the sum of about $50,000; whereas, in truth and in fact, said defendant Peter had obtained an option to purchase said claims for the sum of $2,000.00;

"(2) That attempts were from time to time being made by outside interests and dissatisfied former stockholders to get control of the property of said corporation, and that, if the said outside interests or dissatisfied former stockholders should get control of the said mining properties, the persons to be defrauded would lose their investments, and that, to prevent the said outside interests and said dissatisfied former stockholders from getting control of the said property to the injury of the said persons to be defrauded, it would be necessary for the persons to be defrauded to subscribe and pay for large blocks of stock then being offered for sale in said corporations, so that the voting power of the said stock could be obtained, and so that the mining properties could continue to be operated, and so that the debts of the said corporations could be paid; whereas, in truth and in fact, it would not be necessary for said persons to be defrauded to subscribe and pay for large blocks of said stock, to prevent the outside interests and dissatisfied former stockholders, from getting control of the mining properties of the said corporations, it being the intent and object of said defendant, by such representations, to induce and persuade said persons to be defrauded, to subscribe and pay for the said stock, so that the defendant might appropriate the entire proceeds, or a large part of the proceeds, from the sale of said stock, to his own use in the way of salaries, bonuses, traveling expenses, commissions, and in other ways to the grand jurors unknown;

"(3) That the mining properties owned, at the time such representations were made, by said corporations, respectively, were being developed, operated, and improved as rapidly as was possible with the money subscribed by the said persons to be defrauded; that such money so subscribed by said persons to be defrauded had been and would continue to be economically spent and used for the development of the property and the production and marketing of the ores produced from said properties; that large sums were needed from time to time to pay the expenses of the operation of the mining properties and the building of various structures on the mining properties, and that such sums were being, or were about to be, raised by the sale, to the persons to be defrauded, of stock owned by the particular corporation issuing the stock offered for sale, or by the sale of stock on which said corporation had an option; whereas, in truth and in fact, said mining properties were not being developed, operated, and improved as rapidly as was possible with the money subscribed by the said persons to be defrauded, nor had said money, subscribed by said persons to be defrauded, been spent, nor was it then being spent, nor was it the intention of said defendant to thereafter spend, such money in an economical manner, and to develop the properties,

and to produce and market ores; nor were the sums needed to pay the expenses of operation of the mining properties and the building of various structures on the mining properties, to be raised by the sale to the persons to be defrauded of stock owned by the particular corporation issuing said stock, or by the sale of stock on which said corporation had an option, it being the intention of the defendant to offer for sale, and the said defendant, as part of said scheme and artifice to defraud, did offer for sale, large blocks of his own personal stock in the various corporations, with the intent, object, and purpose of using the proceeds from the sale of said stock for his own personal use and benefit;

"(4) That the interests of the persons to be defrauded would be faithfully safeguarded, and that their future was well taken care of; that the investment in the Mascot Mining & Milling Company, Limited, was the best investment any one could make; whereas, in truth and in fact, the interests of the said persons to be defrauded would not be faithfully safeguarded, and their future was not well taken care of, and the investment in the Mascot Mining & Milling Company, Limited, was not the best investment any one could make, but was of little or no real value, and was highly speculative, and the affairs of the said Mascot Mining & Milling Company, Limited, were being conducted by the defendant for his own personal benefit and profit;

"(5) That because of the inability of the stockholders of the Mascot Mining & Milling Company, Limited, to raise more money by sale of and subscription to stock in said corporation, it was necessary to permit the assets of the said Mascot Mining & Milling Company, Limited, to be sold at receiver's sale, to satisfy the debts and obligations of the said corporation; that the defendant regretted that such a result had been forced upon the said corporation by the creditors of the said corporation, and that it could not be helped; whereas, in truth and in fact, the proceedings under which the receiver was appointed for the property of the said Mascot Mining & Milling Company, Limited, and under which proceedings the assets of the said Mascot Mining & Milling Company, Limited, were sold, were brought about and controlled largely, if not entirely, by the defendant himself, and were instituted and carried out for the personal benefit and gain of the defendant, and to defraud numerous stockholders of the said Mascot Mining & Milling Company, Limited, of their stock in said corporation;

"(6) That the said Mascot Mining & Milling Company, Limited, would start shipping ore from its property in Blaine county, Idaho, during the month of January, 1918; whereas, in truth and in fact, the Mascot Mining & Milling Company, Limited, did not start shipping ore from its said mining property in Blaine county, Idaho, during the month of January, 1918, and defendant never intended that said Mascot Mining & Milling Company, Limited, should start shipping any ore from its said property during the month of January, 1918;

"(7) That numerous and large dividends would be paid said persons to be defrauded on the stock subscribed and paid for by said persons, and particularly that the Mascot Mining & Milling Company, Limited, expected to declare a handsome dividend to its stockholders in May, 1918; whereas, in truth and in fact, no dividend on the stock subscribed and paid for by the persons to be defrauded would be paid, and [defendant] never intended that any such dividends should be paid;

"(8) That monthly or semimonthly reports, showing the financial condition of the respective corporations, would be given to the stockholders in said corporations; whereas, in truth and in fact, no such monthly or semimonthly reports would be given to said stockholders, and defendant never intended to give such reports to the said stockholders;

"(9) That in September, 1916, a large amount of milling ore was developed and available on the property of the Mascot Mining & Milling Company, Limited, and plans were then being perfected for the installation of a plant for the treatment of said ores; whereas, in truth and in fact, plans were not being perfected for the installation of a plant for the treatment of any ores on the property of the said Mascot Mining & Milling Company, Limited, and no plans have ever been perfected for the installation of any plant;

"(10) That soon after September 15, 1916, a milling plant, the first unit of which was to be of 100 tons capacity, was to be built on the mining properties in Blaine county, Idaho, and that the system of ore treatment to be employed was to be table concentration and oil flotation; whereas, in truth and in fact, it was not the intention of said defendant to build a milling plant of any kind or capacity soon after September 15, 1916;

"(11) That in October, 1918, it was the intention of the defendant Peter, who was then general manager of the Mascot Mining & Milling Compay, Limited, to construct on

the mining property, a large hall for social and amusement purposes, which building would contain a music room, pool room, library, dance floor, conveniences for entertainment and moving pictures, and that it was likewise the intent of the said Peter to build bathhouses with hot and cold water facilities, together with a schoolhouse and a general store; whereas, in truth and in fact, it was not the intention of said Peter, on said date, or at any other time, or at all, to construct such buildings;

"(12) That in the spring of 1921 the defendant Peter, as general manager of the Mascot Mining & Milling Corporation, Limited, would undertake to build a 700-H. P. hydroelectric power plant, and the first unit of what would eventually be a 1,000-ton milling plant; whereas, in truth and in fact, it was not the intention of said defendant Peter to undertake the building of any such plants.

"That each and all of the above and foregoing alleged false and fraudulent pretenses, representations, and promises were in fact false, and were known by the defendant, when so devising said scheme and artifice, and at the time of the committing of the several offenses herein mentioned, to be false and untrue, and were made by the said defendant with the intent and object and for the purpose of misleading and defrauding the persons to be defrauded, and to induce the said persons to be defrauded, to send and pay their money and property to the said defendant, under his own name and under the names of the Mascot Mining & Milling Company, Mascot Mining & Milling Company, Limited, and Consolidated Mascot Mines Corporation."

As heretofore stated, the foregoing allegation of the "scheme or artifice" was adopted by reference in all of the counts of the indictment, including counts 2 and 3. The several counts differ only in their description of some particular letter or article mailed. The question presented here is whether the scheme or artifice by the court submitted to the jury is to be fairly found within the indictment.

Section 215 was founded on section 5480 of the Revised Statutes of the United States. The present section (Penal Code, § 215), while radically changing and greatly enlarging the previous statute, contains nothing that indicates the intention of Congress to limit or minimize the particularity with which the offense therein created must be pleaded. Mr. Justice Field, speaking for the Supreme Court of the United States in United States v. Hess, 124 U. S. 483, 8 S. Ct. 571, 31 L. Ed.

516, said: "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances."

The court there held the indictment bad, in that "all the particulars constituting the offense of devising a scheme to defraud are wanting." In Dalton v. United States, 127 F. 544, the Circuit Court of Appeals for the Seventh Circuit, dealing with said section 5480, held that an indictment under that section must not only charge the devising of a scheme or artifice to defraud, to be effected by using the mails, but must set out the facts which constituted the specific scheme or artifice so devised by defendant. This court, in Savage v. United States, 270 F. 14, said: "The particulars of the scheme are matters of substance, and must be set forth with sufficient certainty * * * to * * * acquaint the defendant with the" charge "against him." See, also, many cases cited, U. S. Code Annotated, tit. 18, § 338, note 92.

[2-4] The question here to be determined is: Are the particulars of the scheme or artifice submitted by the trial court to the jury, as shown in assignment 78, fairly set forth in the indictment? The elements of the scheme as defined and specified by the court, are, first, the organization of successive corporations; second, inducing the purchase of stock by false representations; third, that plaintiff in error would loan money to the corporation, get it in debt to himself, and at some favorable opportunity by some appropriate legal proceedings, sell the assets of the corporation, and by clear application acquire the assets himself; and, fourth, that he would thereupon organize another corporation and repeat the scheme.

Repeated readings of the charging part of the indictment in question have failed to reveal to us in any apt or certain language the particular scheme or artifice described by the court in the instruction referred to. There is nothing said in the indictment about successive corporations. There is nothing said in the indictment about the plaintiff in error getting the corporations in debt to him, or his acquiring the property of the corpora-

tions. The only paragraph of the indictment, we think, which could be contended as remotely bearing upon such a particular scheme, is paragraph 5 of a number of paragraphs which set forth the alleged false representations, following the body of the scheme proper. That paragraph does allege in substance that the plaintiff in error falsely expressed regret that, because of the inability of the stockholders to raise more money by sale of and subscription of stock, it was necessary to permit the assets of the corporation to be sold, but that it could not be helped; whereas, it is alleged that the proceedings, under which the receiver was appointed and the property was to be sold, were brought about and controlled largely, if not entirely, by the plaintiff in error, and were instituted and carried out for the personal benefit and gain of the plaintiff in error, and to defraud the stockholders. But this falls far short of an allegation of the particulars of the specific connected scheme and artifice specified and described by the court in the instruction referred to. The trial of this case occupied about three weeks. There was much discussion between counsel from time to time, as well as colloquies, entirely proper ones, between the court and counsel, touching the respective contentions of the parties and the theory of the government with respect to the prosecution, and, looking at the whole record, one can now readily see how the court may have been led so to frame the instruction. Indeed, there was much in the occurrences at the trial calculated to bring about that result. Nevertheless, it is one of the purposes of an indictment to advise the defendant, who is presumed to be innocent, in advance of the evidence, what the particulars of the scheme are that he is charged with having devised. We are constrained to the conclusion that the court erred in so instructing the jury, and that the case for that reason must be reversed.

In view of the conclusions arrived at in this opinion, we deem it unnecessary to consider the other assignments.

Reversed.